## THE ROCK ISLAND BRIDGE.

A maritime lien can only exist upon movable things engaged in navigation, or upon things which are the subjects of commerce on the high seas or navigable waters. It cannot arise upon anything which is fixed and immovable. It does not, therefore, exist upon a bridge.

THIS was a libel filed in the District Court for the Northern District of Illinois, against that part of the Rock Island Railroad Bridge which is situated in the Northern District of Illinois, for alleged damages done by that part of the bridge to two steamboats, the property of the libellant, employed in the navigation of the Mississippi River. It alleged that, by law and the public treaties of the United States, the Mississippi River is, for the distance of two thousand miles, a public navigable stream and common highway, free and open to all the citizens of the United States, who are entitled to navigate the same by sailing and steam vessels, and otherwise, without impediment or obstruction; that the Rock Island Bridge obstructed the free navigation of the stream; and that by collision with this obstruction the steam vessels

of the libellant had been injured, and that he had in consequence been damaged to an extent exceeding seventy thousand dollars.

In accordance with the prayer of the libel, process was issued and the property attached. The Mississippi and Missouri Railroad Company and others then intervened as claimants, and filed an exception to the jurisdiction of the court to proceed against the property in question in the manner "in which the same is sought to be proceeded against by the libel." In other words, they objected to the jurisdiction of the court to take a proceeding *in rem* against the property. The exception was sustained by the District and Circuit Courts, and the libel dismissed. The correctness of this ruling was the sole question presented for the determination of this court.

*Messrs. Arrington and Rae, in support of the jurisdiction:*

The jurisdiction of the American admiralty extends to all cases of tort committed on navigable waters. It may be said that the bridge is attached to, and is a part of the land; that it is like a wharf, and can no more be libelled than it. This is not so. A wharf is the shore. A bridge is not a shore. A bridge is like a vessel,—over or on the stream. A floating bridge would be within the admiralty jurisdiction: a bridge aground must be so also. When the *termini* rest upon either shore, the bridge is not more attached to the soil than a vessel chained to the shore. The shore, in either case, is but the incident.

To make the admiralty jurisdiction depend upon subject-matter and not upon locality, would lead to a perplexing confusion of ideas. The principle of jurisdiction in cases of *tort* ought to depend upon place, not upon the *object affected.* Like crime, it is essentially local. In *The Volant,*[*] Dr. Lushington says that the jurisdiction "does not depend upon the existence of the *ship*, but upon the origin of the questions to be decided, and the *locality.*"

*Mr. B. B. Cook, contra.*

---

[*] 1 W. Robinson, 388.

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

There is no doubt, as stated by the counsel for the appellant, that the jurisdiction of the admiralty extends to all cases of tort committed on the high seas, and in this country on navigable waters. For the redress of these torts, the courts of admiralty may proceed *in personam*, and when the cause of the injury is the subject of a maritime lien, may also proceed *in rem*. The latter proceeding is the remedy afforded for the enforcement of liens of that character.

A maritime lien, unlike a lien at common law, may, in many cases, exist without possession of the thing, upon which it is asserted, either actual or constructive. It confers, however, upon its holder such a right in the thing that he may subject it to condemnation and sale to satisfy his claim or damages; and when the lien arises from torts committed at sea, it travels with the thing, wherever that goes, and into whosesoever hands it may pass. The only object of the proceeding *in rem*, is to make this right, where it exists, available—to carry it into effect. It subserves no other purpose.

The lien and the proceeding *in rem* are, therefore, correlative—where one exists, the other can be taken, and not otherwise. Such is the language of the Privy Council in the decision of the case of *The Bold Buccleugh*.* "A maritime lien," says that court, "is the foundation of the proceeding *in rem*, a process to make perfect a right inchoate from the moment the lien attaches; and whilst it must be admitted that where such lien exists a proceeding *in rem* may be had, it will be found to be equally true, that in all cases where a proceeding *in rem* is the proper course, there a maritime lien exists, which gives a privilege or claim upon the thing to be carried into effect by legal process."

There is an expression in the case of *The Volant*,† attributed to Dr. Lushington, which militates against this view. He is reported to have said, that the damage committed on

---

* 7 Moore, 284.                    † 1 W. Robinson, 388.

the high seas confers no lien upon the ship, and this is cited by the counsel of the appellant to show that a maritime lien is not the foundation of a proceeding *in rem*. But the expression is a mere dictum, and the Privy Council in the case cited allude to it, and observe that it is doubtful, from a contemporaneous report of the same case,* whether the learned judge made use of it, and add, that if he did, the expression is certainly inaccurate, and not being necessary for the decision of the case cannot be taken as authority.

A maritime lien can only exist upon movable things engaged in navigation, or upon things which are the subjects of commerce on the high seas or navigable waters. It may arise with reference to vessels, steamers, and rafts, and upon goods and merchandise carried by them. But it cannot arise upon anything which is fixed and immovable, like a wharf, a bridge, or real estate of any kind. Though bridges and wharves may aid commerce by facilitating intercourse on land, or the discharge of cargoes, they are not in any sense the subjects of maritime lien.

DECREE AFFIRMED.