[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15652
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2012
JOHN LEY
CLERK

D. C. Docket No. 1:09-cv-22437-JLK


ESOTERIC, LLC,
an Oregon limited liability company,

Plaintiff-Appellee,


versus


ONE (1) 2000 EIGHTY-FIVE FOOT AZIMUT
MOTOR YACHT NAMED M/V "STAR ONE",
her engines, tenders, tackle, equipment,
furnishings and appurtenances, In Rem, et al.,

Defendants,


NICOLAS ESTRELLA,
her owner,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 12, 2012)

Before EDMONDSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant Nicholas Estrella appeals the district court's judgment in favor of Esoteric, LLC ("Esoteric") in a maritime salvage case. Following a 2-day bench trial, the district court awarded Esoteric $67,800 for the voluntary salvage of a motor vessel named the M/V Star One, which is owned by Estrella. The district court also awarded Esoteric $72,755 in attorneys' fees. Reversible error has been shown; we affirm in part but reverse the award of attorneys' fees.

While traveling near the Bahamas, the M/V Esoteric -- a yacht owned by Esoteric -- responded to an emergency report about a nearby sinking vessel. When the M/V Esoteric arrived at the scene, its crew members saw a large capsized yacht -- which they later identified as the M/V Star One -- that was mostly submerged. The M/V Esoteric's captain determined that the submerged vessel -- which was located in a busy sea lane -- presented a clear and present navigational hazard and could sustain additional damage if it drifted into nearby coral reefs. Thus, the M/V Esoteric towed the M/V Star One to the closest harbor, where Bahamian law

enforcement officials ordered the crew to leave the M/V Star One anchored just outside the harbor entrance.

A couple of days later, Overseas Salvage & Maintenance, Ltd. ("Overseas"), a professional salvage company, entered into a contract with Estrella's insurance company, Federal Insurance Company ("Federal"), to right the M/V Star One, pump her dry, and tow her back to Miami. Federal paid Overseas $93,000 for its services and paid a second salvage company $2,800 to tow the M/V Star One to a boatyard up the Miami River.[1] Esoteric later filed the instant complaint seeking a salvage award from Estrella.[2]

Estrella raises three issues on appeal.[3] First, he argues that the district court erred in concluding that the M/V Esoteric's salvage efforts were successful. In an

---

[1]We reject Estrella's argument that the district court erred in failing to apportion the salvage award between Esoteric and Overseas. Because Overseas was hired and paid by Federal for its salvage services, it was not eligible to share in the salvage award. See Klein v. Unidentified Wrecked & Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir. 1985) (stating that eligibility for a salvage award requires a voluntary act of the salvor).

[2]Esoteric's complaint was filed against the M/V Star One in rem, Estrella in personam, and Federal in personam. Esoteric later abandoned its in rem claim. And because the district court stayed the case against Federal pending resolution of an insurance coverage dispute between Estrella and Federal, this appeal involves only Esoteric's suit against Estrella in personam.

[3]Estrella also argues that the cumulative effect of the district court's errors warrants reversal. Even if we assume -- without deciding -- that the cumulative error doctrine applies to civil proceedings, Estrella has failed to demonstrate that the district court erred in granting Esoteric's request for a salvage award.

admiralty bench trial, we review the district court's factual findings for clear error and review <u>de novo</u> its conclusions of law. <u>Dresdner Bank AG v. M/V Olympia Voyager</u>, 463 F.3d 1210, 1214 (11th Cir. 2006).

To succeed on a claim for a salvage award, a salvor must demonstrate these three elements: "(1) [a] maritime peril from which the ship . . . could not have been rescued without the salvor's assistance[;] (2) [a] voluntary act by the salvor . . . [; and] (3) [s]uccess in saving, or in helping to save at least part of the property at risk." <u>Klein</u>, 758 F.2d at 1515.[4]  To be "successful," a party need not be responsible by itself for saving the property at issue; "[i]t is sufficient if his efforts contributed in some way to the ultimate success." <u>Legnos v. M/V Olga Jacob</u>, 498 F.2d 666, 672 n.8 (5th Cir. 1974).

When the M/V Esoteric first encountered it, the M/V Star One had capsized, was mostly submerged, and appeared to be at risk of sinking.  The M/V Star One was located in a well-traveled sea lane where the water was more than 6,000 feet deep.  During the couple of hours that the M/V Esoteric was on site, the M/V Star One drifted about a half a mile toward a stretch of coral reefs, portions of which were fewer than six feet deep.  Based on this record, we accept that, absent rescue,

---

[4]That the M/V Star One was in maritime peril and that the M/V Esoteric acted voluntarily is undisputed.

4

the M/V Star One would likely have either sunk in more than 6,000 feet of water, been struck and damaged by another boat, drifted into shallow reefs, or -- under the best case scenario -- continued to drift unharmed in the open ocean, making it difficult to locate. As a result of the M/V Esoteric's salvage efforts, the M/V Star One was anchored safely in an area where it could be located easily, where it was in less danger of being struck by other boats, and where the water was only 35 feet deep. Although the M/V Esoteric lacked the capabilities to right the M/V Star One, to pump her dry, or to add floatation, the M/V Esoteric's efforts permitted a professional salvage company to do so a couple of days later. Because the M/V Esoteric's efforts contributed to the overall success of the salvage mission, we see no clear error in the district court's conclusion that Esoteric satisfied the "success" element and demonstrated its eligibility for a salvage award. See id.

Estrella also argues that the district court erred in determining the post-salvage value of the M/V Star One when it relied entirely on the testimony of Esoteric's expert witness, Richard Learned. Estrella first asserts that the district court denied improperly his motion to strike Learned as a witness based on Esoteric's untimely expert witness disclosure. We review the district court's decision to exclude a witness not listed on a pretrial witness list for abuse of discretion. Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser

5

Aluminum & Chem. Corp., 684 F.2d 776, 780 (11th Cir. 1982). In determining whether the district court abused its discretion, we consider "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party." Id.

We see no abuse of discretion in permitting Esoteric to present Learned's testimony at trial. In denying Estrella's motion to strike -- which was filed untimely -- the district court noted that neither party had disclosed its expert witnesses properly. Because the case required expert testimony about the post-salvage value of the M/V Star One, the court permitted each party to call one expert witness despite their respective failure to comply with court orders. We agree that Estrella suffered no significant prejudice from Esoteric's late disclosure because Estrella had had access to Learned's detailed survey report and appraisal for several months before trial. Moreover, because Learned's testimony was central to one of the main issues in the case, Estrella was on notice that he needed to present his own expert testimony on that issue.

Estrella also argues that the district court erred in failing to consider the proffered testimony of his expert, Ron Milardo, in determining the post-salvage value of the M/V Star One. During the bench trial, the district court qualified Milardo as an expert in the sale of salvaged vessels but refused to allow him to

give an expert opinion about the value of the M/V Star One. The district court later changed its ruling and permitted Estrella's counsel to proffer that Milardo would have testified that the M/V Star One had a post-salvage value of $150,000. The court stated expressly that it would consider Milardo's proffered testimony as part of the record and that "some evidence" existed that the vessel was worth $150,000.

Based on this record, we conclude that the district court committed clear error when the court stated in its Findings of Fact and Conclusions of Law that Estrella failed to proffer evidence about the M/V Star One's value and that Learned's testimony was uncontradicted. But, because the record supports the district court's ultimate conclusion that the M/V Star One had a post-salvage value of $565,000, we affirm. See Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010) ("This court may affirm a decision of the district court on any ground supported by the record.").

Learned, a certified marine surveyor and appraiser, provided detailed testimony and a written report about his methods of valuation, which included inspecting the M/V Star One in person, evaluating the level of damage sustained, and then using national appraisal standards to assign a post-salvage value of $565,000. Although Milardo's proffered testimony was that the M/V Star One

was worth only $150,000, nothing evidenced how that value was established or that Milardo had ever inspected the M/V Star One. Thus, the weight of the evidence supports the district court's conclusion about the post-salvage value of the M/V Star One.

We next address Estrella's argument that the district court erred in awarding Esoteric attorneys' fees based on its conclusion that Estrella acted in bad faith. "We review the decision to grant or deny attorney's fees for an abuse of discretion." Coastal Fuels Mktg. v. Fla. Express Shipping Co., 207 F.3d 1247, 1250 (11th Cir. 2000).

In general, attorneys' fees are not recoverable in admiralty cases. Offshore Marine Towing, Inc. v. MR23, 412 F.3d 1254, 1256 (11th Cir. 2005). One exception to this rule is when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, 111 S. Ct. 2123, 2133 (1991). "In determining the propriety of a bad faith fee award, 'the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.'" Rothenberg v. Sec. Mgmt. Co., 736 F.2d 1470, 1472 (11th Cir. 1984).

In granting Esoteric's request for attorneys' fees, the district court determined that Estrella failed to offer "any evidence" that Esoteric's salvage

efforts were unsuccessful.[5]  The court then concluded that "Estrella had no basis for disputing [Esoteric's] salvage claim" and that Estrella acted in bad faith.  In sum, the court stated that, "[h]aving had no cognizable defense at law, [Estrella] unnecessarily required this Court to adjudicate -- not to mention [Esoteric] to litigate -- this case knowing that it had provided no support for its claims. . . . Such an abuse of the legal system demands attorneys' fees be awarded to the opposing party."

Estrella challenged the success of Esoteric's salvage efforts based on trial testimony that -- with the exception of being anchored -- the M/V Star One's condition had remained unchanged after the M/V Esoteric's purported salvage efforts.  That the M/V Star One remained capsized, mostly submerged, and at the same level of risk of sinking after being towed by the M/V Esoteric as it had been in before being towed is undisputed.  Thus, contrary to the district court's conclusion, Estrella presented evidence to support his defense argument.  And we cannot say that this argument was uncognizable at law or constituted an "abuse of the legal system."  See Christiansburg Garment Co. v. EEOC, 98 S. Ct. 694, 700 (1978) (admonishing district courts to "resist the understandable temptation to

---

[5]The district court also stated that Estrella failed to offer evidence that the M/V Star One was not in maritime peril.  But Estrella had already conceded this fact before trial; and, thus, it was not at issue in the district court.

engage in post hoc reasoning by concluding that, because a [party] did not ultimately prevail, his action must have been unreasonable or without foundation."). Because the requisite success of a salvage effort is a fact-intensive inquiry, Estrella did not abuse the legal system by insisting on proceeding to trial and putting Esoteric to its factual burden of proof.[6] We are unpersuaded that Estrella's litigation conduct constituted bad faith; and we reverse the award of attorneys' fees.

AFFIRMED IN PART; REVERSED IN PART.

---

[6]We note that the district court denied Esoteric's Motion for Summary Judgment as to Liability -- filed six months before trial -- because no depositions had been taken, and discovery was still ongoing.